IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MICHAEL PHILLIPS, #256 638,    )
    )
    Petitioner,    )
    )
v.    )    CIVIL ACTION NO.: 3:12-CV-234-WHA
    )    [WO]
WILLIE THOMAS , *et al.*,    )
    )
    Respondents.    )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on a petition for writ of habeas corpus under 28 U.S.C. §

2254 filed by Alabama inmate Michael Phillips ["Petitioner"].[1]

## I. BACKGROUND

A jury empaneled before the Circuit Court for Lee County, Alabama, convicted Petitioner

of capital murder on November 8, 2007. On December 11, 2007, the trial court sentenced

Petitioner to life without the possibility of parole. *Doc. Nos. 1, 20.*

Petitioner filed a direct appeal of his conviction in which he presented the following

claims:

    1.    The trial court erred in denying his request to instruct the jury on felony murder as

a lesser included offense.

    2    The evidence presented at trial was insufficient to sustain his conviction and,

therefore, the trial court erroneously denied his motion for judgment of acquittal.

    3.    The trial court erred in denying his challenge for cause of prospective juror 147.

*Doc. No. 20, Exh. B.*

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk of Court in this habeas action.
References to exhibits ("Exh.") are to those included with Respondents' answer, Doc. No. 20, as
supplemented, Doc. Nos. 24, 28.  All page references are to those assigned by CM/ECF.

On March 6, 2009, the Alabama Court of Criminal Appeals affirmed Petitioner's conviction. *Doc. No. 20, Exh. D.*  The appellate court summarized the evidence adduced at trial:

Around 4:30 p.m. on April 11, 2004, Lieutenant Bruce Delong of the Opelika Police Department ("OPD") heard a radio dispatch indicating that there was a gunshot victim in the 100 block of Vero Court in Opelika. Upon arrival, Lt. Delong found the victim, Gregory Johnson, lying on the ground. He had been shot in the chest, but was still alive. Bernard Harris and Richard Holloway were standing with Johnson. An ambulance took Johnson to East Alabama Medical center where he was pronounced dead.

At the time of the murder, Bernard Harris lived adjacent to Vero Court and could see Vero Court from the backyard of his house. On April 11, 2004, Harris was in the backyard of his house when he heard gunshots coming from the direction of Vero Court. Harris looked in the direction of the gun shots and saw a black man face down on the ground, along with two other men. One, a white male, was patting down the man on the ground; the other, a black male, was running away from the others. Anothony McKendrick Russell was also in the area near Vero Court at the time of the shooting. After hearing the gunshots, Russell observed two men, one white and one black, walk past.

Brenda Hess testified that two men stayed with her and the father of her two children, Luke Hughley, on the weekend of April 10 and 11, 2004. The two men were friends of Bobby Scott Smith, a friend of Luke Hughley; Smith had asked Hughley to put them up for the night. The two men, one white and one black, went by the names "Joe-Joe" and "Mickey," respectively. During their stay, Hess' 10-year-old son found a revolver under a bed in the room in which the two men had been sleeping and gave it to Hess. Hess then gave the gun to Hughley.

Luke Hughley testified that the two men were named Joey Royal and Mike. At trial, Hughley identified Phillips as the man named "Mike" who spent the night of April 10, 2004 at his apartment. Hughley identified the gun given to him by Hess as a revolver. After Hughley confronted the two men about finding the gun and told them that he did not allow guns to be in his house, Mike took possession of the gun. While the two men were at Hughley's apartment, Hughley overheard the two talking about needing money. The two talked about "licking someone"—i.e., robbing them—to get money. (R. 600.)

Hughley testified that Bobby Scott Smith and Smith's girlfriend, Melanie, picked up the two men from Hughley's apartment around 1:30 p.m. on Sunday, April 11. Hughley saw the two men again that night at Smith's residence. Hughley observed that Mike had large amounts of cash and was "flashing" the cash in Hughley's presence. (R. 608.) Hughley also observed Joey wearing a gold necklace with a cross on it.  Joey had not been wearing the necklace while he was

at Hughley's apartment. Hughley recognized the chain because it belonged to his friend Gregory Johnson, the victim in this case.

Lee Garrett Johnson was also at Hughley's apartment on the morning of April 11, 2006 and saw the defendant and his accomplice at the apartment. Johnson recalled seeing Bobby Scott Smith drive up and overheard Royal, Phillips and Scott talking about needing to "hit a lick" so they could get back to Florida (R. 636-7.) Johnson specifically recalled hearing Scott suggest that they "hit a lick" on "the Line," a nickname given to Vero Court. (R. 637.) Johnson testified that when he overheard this conversation, he yelled down to the three saying, " . . . I was, like, man, y'all go around f--ing around on the Line, y'all are going to get f---ed up. Just like that." (R. 637-8.) Johnson saw Royal holding a small caliber revolver while Royal, Scott and Phillips were talking. Between 5:00 p.m. and 6:00 p.m. that day, Johnson took Hughley to a gas [station] and saw Royal, Phillips, Scott and a girl named Melanie in the store. Johnson observed Royal wearing a gold-rope necklace with a cross on it, like the one Johnson testified the victim used to wear. According to Johnson, Royal was not wearing the necklace when Johnson saw him earlier in the day.

Ginger McConnell, Bobby Scott Smith's sister, testified that Bobby Scott Smith and Joey Royal were related by marriage. On the night of April 11, 2004, McConnell drove to her mother's house to see Smith. She was driving her mother's white Grand Marquis which she described as looking like a police cruiser. As she arrived, a black man with Smith and Royal took off running. McConnell picked up her niece, Smith's daughter, K---.  K---  showed McConnell a gold rope chain necklace with a cross on it and a "wad" of cash given to her by Royal. (R. 663). McConnell identified the necklace presented as State's exhibit number one as the necklace given to McConnell by her niece.  McConnell did not allow K--- to wear it because, "[she] knew it come from somewhere that was not right." (R. 664) K--- told McConnell that Royal had even instructed K--- that "she didn't need to wear it right now." (R. 664)

Althea Grimmett, Gregory Johnson's girlfriend at the time of his murder, testified that Johnson routinely wore gold chain necklaces. Grimmett positively identified the gold necklace presented as State's exhibit number one as one of the gold necklaces worn by Johnson. Grimmett testified that Johnson wore that necklace every day.

Sergeant John Pruitt of the OPD conducted surveillance on Bobby Scott Smith's home the night of April 12, 2004 with instructions to stop any vehicles leaving the premises and contact any occupants. After midnight that night, an Oldsmobile pulled out of the driveway at Smith's house. Sergeant Pruitt attempted to pull the car over, but it sped away. Eventually, the car pulled into a parking lot and occupants fled. Sergeant Pruitt apprehended two of the three occupants and recovered a 44-caliber revolver from the glove compartment of the car.

Jennifer Thompkins, formerly a corporal in the investigation division of the OPD, conducted interviews and gathered evidence the day of Johnson's murder. At trial, Thompkins testified to recovering the gold necklace presented at trial as State's exhibit number one from McConnell's house. Before sealing the necklace, she conducted a lineup involving other pieces of jewelry in which Grimmett positively identified the necklace as Gregory Johnson's. Thompkins also testified that six unfired Remmington 32-caliber rounds and two unfired Winchester 32 caliber rounds were recovered at the scene of Johnson's murder. Additionally, Thompkins testified that she conducted an interview of Tony Lewis Threatt. Threatt identified the revolver recovered by Sergeant Pruitt as Johnson's gun.

Heather Harrelson, a Forensic Scientist in the Firearms and Tool Marks Section of the Alabama Department of Forensic Science, examined the bullets removed from Gregory Johnson's body and concluded that the bullets were 32-caliber class bullets. She determined that both bullets were fired from the same barrel of a 32-caliber pistol.

Ronald Hamilton testified to having a conversation with Phillips while the two were incarcerated in adjacent cells in a Florida penitentiary. Hamilton stated that Phillips told him that Phillips and another man got into a confrontation with someone, leading Phillips' friend to kill the other man. Phillips explained to Hamilton how Phillips' cohort tried to pin the murder on Phillips. At some later point, the two were separated after they got into some sort of altercation. Hamilton then made statements to an investigator from Alabama, Officer Pruitt, regarding his discussion with Phillips. In his discussions with the officer at the correctional facility, Hamilton stated that Phillips was the shooter. However, at trial Hamilton testified that the investigator had coerced Hamilton into making a statement in which he identified Phillips, not his cohort, as the triggerman. Hamilton further testified that Officer Pruitt wrote out the facts and made Hamilton sign the statement, but denied being threatened, beaten or tortured by Officer Pruitt. Officer Pruitt denied coercing Hamilton into making the statement and testified that Hamilton freely gave the statement.

*Doc. No. 20, Exh. D* at 2-8.

Petitioner filed an application for rehearing from the appellate court's denial of his appeal in which he raised the three claims he presented on direct appeal. *Exh. E.* Following the appellate court's denial of his rehearing application, Petitioner filed a petition for writ of certiorari with the Alabama Supreme Court. *Exhs. F, G.* In his petition for certiorari review, Petitioner presented two issues on appeal. *Ex G.* Petitioner did not present in his certiorari petition the issue regarding the challenge for cause. *Id.* The Alabama Supreme Court denied his

petition for writ of certiorari on August 6, 2010, and a certificate of judgment was issued the same day. *Exhs H, I.*

Petitioner filed a Rule 32 petition on May 4, 2011. The trial court addressed the following allegations presented in Petitioner's Rule 32 petition:

> 1) The Constitution of the United States or of the State of Alabama requires a new trial, a new sentencing, or other relief;
>
> 2) The trial court was without jurisdiction to render the judgment or to impose sentence;
>
> 3) The trial court erred in granting the State's motion to continue over objection of Petitioner for a speedy trial.
>
> 4) The trial court erred in granting a joint motion to continue;
>
> 5) The trial court erred in denying Petitioner's motion for judgment of acquittal.
>
> 6) The trial court refused certain jury charges requested by Petitioner;
>
> 7) The trial court failed to disqualify a potential juror.
>
> 8) Trial counsel was ineffective for failing to inform Petitioner of his right to testify at trial.

*Doc. No. 20, Exh. J* at 22. The trial court denied the petition on July 7, 2011. *Id.*

On July 21, 2011, Petitioner filed a motion to alter, amend, or vacate judgment which the trial court denied on August 16, 2011. Petitioner filed notice of appeal from the denial of his Rule 32 petition on September 13, 2011. On September 22, 2011, the Alabama Court of Criminal Appeals dismissed the appeal as untimely filed. The appellate court denied Petitioner's application for rehearing on October 4, 2011, and issued a certificate of judgment on December 12, 2011. *See Doc. No. 11, Exhs. 2A, 2B, 3.*

Petitioner filed a second Rule 32 petition on April 4, 2012. He claimed that the Alabama Court of Criminal Appeals erred in concluding that the appeal of his first post-conviction petition

was untimely. In an amendment to the petition, Petitioner reiterated his challenge to the appellate court's decision regarding the appeal of his first Rule 32 petition and further claimed that the trial court lacked jurisdiction to render judgment or impose sentence because it violated the Interstate Agreement on Detainers Act ["IADA"] by granting continuances which violated his right to a speedy trial.  The trial court summarily dismissed Petitioner's second Rule 32 petition on June 20, 2012, concluding that the appellate court, not the trial court, had jurisdiction to consider timeliness challenges regarding filing an appeal and that Petitioner's claim regarding the IADA could have been, but was not, raised on appeal. *Doc. No. 20, Exhs. J, K, L.*

Petitioner filed an appeal from the denial of his second Rule 32 petition.  The Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal in a memorandum opinion filed October 26, 2012. The appellate court further determined that: 1)  Petitioner's claim it should have granted him an out-of-time appeal because his motion to alter, vacate, or amend the trial court's denial of his first post-conviction tolled the time during which he had to appeal had no merit; and 2) Petitioner's argument that the circuit court lacked jurisdiction to render judgment or impose sentence because it violated his speedy trial rights under the IADA was not a jurisdictional issue and, therefore, subject to the procedural bars of Rule 32, *Alabama Rules of Criminal Procedure*, because it could have been, but was not, raised or addressed on appeal. The Court of Criminal Appeals denied Petitioner's application for rehearing on November 9, 2012. The Alabama Supreme Court denied Petitioner's application for certiorari review on January 4, 2013, and the appellate court issued a certificate of judgment the same day.  *Doc. No. 20, Exh. M-R.*

On March 11, 2012, while his second state post-conviction petition was pending, Petitioner filed this application for habeas corpus relief under 28 U.S.C. § 2254, and an amended petition on February 28, 2013, claiming:

1.  The trial court erred in denying his request for a jury instruction on felony murder;

2.  The evidence was insufficient to support his conviction of capital murder;

3.  The trial court erred in denying his challenge for cause of a prospective juror;

4.  The trial court erred in granting the State's motion to continue;

5.  The trial court erred in granting a joint motion to continue which violated the Interstate Agreement on Detainers Act;

6.  The trial court erred in denying his motion for judgment of acquittal where the evidence pointed to someone else as the perpetrator of the crime;[2]

7.  The trial court erred in refusing Petitioner's requested jury instructions #12, #24, #35, and #36;

8.  The trial court erred in not disqualifying a potential jury member who knew the victim;

9.  The trial court erred in refusing his requested jury instruction on felony murder;[3]

10. Trial counsel was ineffective by not allowing Petitioner to testify and in failing to explain to him his right to testify;

11. Trial counsel was ineffective in failing to object when the trial court granted the State's motion to continue, over his objection for a speedy trial, in violation of the Interstate Agreement on Detainers Act;

---

[2] This claim essentially restates Ground Two in which Petitioner challenges the sufficiency of the evidence used to convict him.

[3] This is a restatement of Ground One.

12. Trial counsel was ineffective in failing to object when the trial court granted a joint motion for continuance out of court and without his knowledge, violating the Interstate Agreement on Detainers;

13. Trial counsel was ineffective in failing to object to the trial court's decision to deny the defense's motion for judgment of acquittal where the state failed to prove its case;

14. Trial counsel was ineffective for failing to object when the trial court refused requested jury instructions #12, #24, #35 and #36;

15. Trial counsel was ineffective in failing to object when the trial court did not disqualify a potential juror member on grounds the juror knew or was acquainted with the victim and/or the victim's family;

16. Trial counsel was ineffective in failing to object when the trial court refused a requested jury charge;

17. Trial counsel was ineffective in failing to object to the trial court's denial of Petitioner's motion for a new trial;

18. Trial counsel was ineffective in failing to object to the admission of prejudicial photographs;

19. The trial court erred in not granting Petitioner's request for an out-of-time appeal on his Rule 32 petition where failing to appeal was not his fault;

20. The trial court lacked jurisdiction to render judgment or impose sentence where it violated Petitioner's rights under the Interstate Agreement on Detainers Act; and

21. Petitioner asserts his actual innocence based on his claim that the evidence was circumstantial and insufficient to support his conviction for capital murder.

*Doc. No. 1* at 6-13; *Doc. No. 19* at 29-30.

Respondents filed answers to the petition, as amended, arguing that Petitioner's claim regarding trial counsels' ineffectiveness, the trial court's conduct in denying his challenge for cause of a prospective juror, and the trial court's actions in granting requests for continuances of trial in violation of the IADA, are defaulted because of his failure to present these claims to the state courts in accordance with the state's procedural rules.  Specifically, Respondents maintain that Petitioner failed to present his claim regarding the trial court's error in denying his challenge for cause in his petition for writ of certiorari in the Alabama Supreme Court during his direct appeal proceedings.  Regarding his claim of trial court error in granting requests for a continuance of trial in violation of the IADA, Respondents assert that the state courts found this claim defaulted because it could have been, but was not, raised on appeal. Regarding the claims Petitioner presented in his first Rule 32 petition and which are also presented in the instant proceeding, and to the extent such claims were not previously raised and addressed on direct appeal, they are not exhausted due to Petitioner's failure to file timely notice of appeal from the denial of his first Rule 32 petition. However, Respondents argue the claims are procedurally defaulted because they are not capable of further presentation to the state courts due to state procedural rules.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Smith v. Jones*, 256 F.3d 1135, 1140-46 (11th Cir. 2001) (2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n.9 (11th Cir. 2000).  Finally, Respondents assert that Petitioner's challenge to the sufficiency of the evidence, the trial court's failure to instruct the jury on felony murder as a lesser included offense, and the state court's failure to grant him an out-of-time appeal from the dismissal of his first Rule 32 petition were properly adjudicated on the merits by the state courts.  *Doc. Nos. 20, 24*. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).   Respondents did not address

Petitioner's challenges to trial counsels' performance presented in Grounds Eleven through Eighteen. The court, therefore, addresses them on the merits.

Petitioner took advantage of the opportunity granted to respond to Respondents' answer and supplemental answers. *Doc. Nos. 19, 26, 30*. After reviewing the § 2254 petition, Respondents' answers, and Petitioner's responses, the court concludes that no evidentiary hearing is required, and that the petition is due to be denied under Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II. DISCUSSION

### A.  Standard of Review

#### i. Claims Adjudicated on the Merits

The Antiterrorism and Effective Death Penalty Act ("AEDPA") significantly limits the circumstances under which a habeas petitioner may obtain relief.  To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1) & (2);[4] *see Williams*, 529 U.S. at 404-05 & 412-13.  A state

---

[4] Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)  resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

court's decision is "contrary to" federal law only if (1) it fails to apply the correct controlling authority or (2) it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id*. at 405-06. A state court's decision can involve an "unreasonable application" of federal law only if it (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409).

Under 28 U.S.C. § 2254(d)(2), federal courts are directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

"This is a 'difficult to meet,' *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011), and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)." *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

   *ii. Procedural Default*

   Respondents assert that Petitioner has procedurally defaulted some of the claims he presented in his habeas corpus petition.  The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).  Thus, claims which have never been presented to a state court or claims which were not exhausted properly in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (where state-court remedies are no longer available because petitioner failed to file a direct appeal or initiate timely state post-conviction action, petitioner has procedurally defaulted on his claims and is generally barred from asserting claims in a federal habeas proceeding); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (citations omitted) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas.");  *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (when petitioner fails to properly exhaust claims in state court and is barred from raising claims in state court by applicable procedural rules, such claims are procedurally defaulted).

   In the instant action, Respondents argue that certain challenges Petitioner makes to his conviction are defaulted due to his failure to present such claims in accordance with the state's

procedural rules which, as explained, is required to exhaust and preserve Petitioner's claims for federal habeas review.

> This court may reach the merits of Petitioner's procedurally defaulted claims
>
> > only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644, 91 L. Ed. 2d 397 (1986); [*Wainwright v*.] *Sykes*, 433 U.S. [72,] 87 [(1977)]. . . . Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96, 106 S. Ct. at 2678. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.*

*Henderson*, 353 F.3d at 892.

> > "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

*Id.* at 892.

The court afforded Petitioner an opportunity to demonstrate the existence of cause for his failure to raise his claims in the state courts properly and prejudice resulting from this failure. In his response, Petitioner asserts as cause for his defaulted claims the ineffectiveness of appellate counsel. *Doc. Nos. 26,* 30.

**B. Grounds One and Nine[5]**

*Trial Court Error in Failing to Give Instruction on the Lesser Included Offense of Felony Murder*

In Grounds One and Nine Petitioner contends the trial court erred in failing to give a requested jury instruction on the lesser included offense of felony murder. He maintains that because the circumstantial evidence presented at trial "never supported every element beyond a reasonable doubt" and reflected his innocence, he was entitled to a lesser included offense instruction on felony murder. *Doc. No. 19* at 3-4. The Alabama Court of Criminal Appeals disagreed. Finding that the evidence failed to support a theory that the victim's death was accidental or unintended, the appellate court found no error stemming from the trial court's refusal to instruct the jury on the lesser included offense of felony murder. *Doc. No. 20, Exh. D* at 8-12.

Prior to closing statements, Petitioner's counsel requested that the trial court give the jury an instruction on the lesser-included offense of felony murder. The trial court denied the request and gave the jury an instruction for capital murder and it also gave jury instructions on intentional murder and robbery in the first degree. *See Doc. No. 20, Exh. A, Vol. 7* at 2-159. Having reviewed the record, the court agrees with the Alabama Court of Criminal Appeals, for the reasons stated in its memorandum opinion, that the trial court did not err in refusing to charge the jury regarding the lesser included offense of felony murder. The Alabama Court of Criminal Appeals' determination that the evidence failed to support a theory that the victim's death was accidental or unintended was neither unreasonable nor erroneous nor an unreasonable determination of the facts in light of the evidence presented. *See Doc. No. 20, Exh D* at 8-12; *Exh. A, Vols. 4-6*.

---

[5] The court addresses Petitioner's claims in varying numerical order based on similarity of claims.

Here, the trial court did not refuse to provide a charge on certain lesser included offenses. *See Beck v. Alabama*, 447 U.S. 625, 637 (1980) ("[W]hen the evidence unequivocally establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction."). Where a capital defendant receives charges on certain lesser included offenses, just not on every single lesser included offense that the evidence might support, or that the defendant might desire, the governing law in *Beck* does not apply. *See, e.g.*, *Schad v. Arizona*, 501 U.S. 624, 646-47 (1991) ("Our fundamental concern in *Beck* was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all. . . . This central concern of *Beck* simply is not implicated in the present case, for petitioner's jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence."); *Powell v. Allen*, 602 F.3d 1263, 1271 (11th Cir. 2010) (determining that *Beck* did not entitle capital defendant to jury instruction on felony murder, where charge included capital murder, intentional murder and manslaughter, such that "the jury was not faced with the 'all-or-nothing choice' *Beck* is concerned with").

In the instant case, Alabama law permitted the charging of lesser included non-capital offenses, and the trial court did instruct the jury on the lesser included non-capital offenses of intentional murder and robbery in the first degree. The trial court determined that the evidence did not support a finding of felony murder and it, therefore, refused to give a jury instruction for this offense. The appellate court agreed, finding no evidence that the victim's murder was

accidental or unintended and, therefore, determined that the trial court had not committed error in refusing to give a felony murder instruction.   From the record before it, the court finds that the Alabama Court of Criminal Appeals' determination that the trial judge did not err in failing to instruct the jury on felony murder as a lesser included offense, in addition to providing jury charges on the lesser included offenses of intentional murder and robbery in the first degree, was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Petitioner is, therefore, not entitled to habeas relief on this claim.

**C. Grounds Two, Six, and  Thirteen**

    *i. Sufficiency of the Evidence and Trial Court Error in Denying Petitioner's Motion for Judgment of Acquittal*

Although Petitioner presents Grounds Two and Six as separate claims, on direct appeal the Alabama Court of Criminal Appeals addressed Petitioner's argument that there was insufficient evidence to convict him of capital murder, and thus, the trial court erroneously denied his motion for judgment of acquittal. *Doc. No. 20, Exh. D* at 12. In support of his insufficient evidence claim Petitioner argues that the evidence pointed to another "assailant" as having committed the crime for which he was convicted, none of the latent fingerprints taken from the victim's car matched Petitioner's fingerprints, and testimony from two witnesses indicated another individual was seen holding a revolver. *Doc. No. 19* at 5-6.   He argues that the fact he was seen prior to the incident in the presence of other individuals implicated in the shooting does not necessarily make him an accomplice. *Id*. at 6-7. He further argues that case law holds that mere presence and association is insufficient to sustain a conviction of aiding and abetting. *Id*. at 7.

The Supreme Court explained the constitutional review process to be applied to a challenge based on sufficiency of the evidence:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

Under § 2254, habeas relief on a claim of insufficient evidence is appropriate only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990). It is within the province of the jury to weigh the credibility of all of the witnesses' testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id*. at 318-19; *see also United States v. Billue*, 994 F.2d 1562, 1565 (11th Cir. 1993) (evaluation of an eyewitness' testimony is the kind of analysis reserved for the jury). A petitioner is not entitled to federal habeas relief if the evidence is merely susceptible to an interpretation other than the defendant's guilt. *Jackson*, 433 U.S. at 326. Sufficiency claims are judged by the elements defined by state law. *Id*. at 324 n.16. *See also Shanklin v. State*, ___ So. 3d ___, 2014 WL 7236978 *48-49 (Ala. Crim. App. 2014) (In ruling on a motion for judgment of acquittal, a trial court must decide whether a reasonable person would be justified in

concluding from the evidence that all the elements of the crime have been established beyond a reasonable doubt).

Petitioner argued on appeal that the trial court erroneously denied his motion for judgment of acquittal where the evidence at trial was insufficient to support his capital murder conviction because most of the evidence against him was circumstantial and the State failed to prove he had a particularized intent to kill the victim or that he sanctioned or facilitated the killing during a robbery.  The appellate court reviewed the evidence in the record and rejected Petitioner's argument finding that the State presented sufficient evidence, both direct and circumstantial, that strongly suggested Petitioner was present when the victim was robbed and killed and that Petitioner participated in the offenses.  After setting forth the evidence adduced at trial, the Alabama Court of Criminal Appeals found the following:

> The jury found P[etitioner] guilty of the capital offense of robbery-homicide, meaning: "Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant." § 13A-5-40(a) (2), Ala. Code 1975. "The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing." *Smith v. State*, 756 So. 2d 892, 938 (Ala. Crim. App. 1997), quoting *Hallford v. State*, 548 So. 2d 526, 534 (Ala. Crim. App. 1988) (internal citations omitted). A person commits murder if "[w]ith intent to cause the death of another person, he causes the death of that person." § 13A-6-2(a) (1), Ala. Code 1975. A person commits robbery in the first degree if he, "in the course of committing a theft [u]ses force against the person of the owner . . . with intent to overcome [her] physical resistance or physical power of resistance; or [t]hreatens the imminent use of force against the person of the owner . . . with intent to compel acquiescence to the taking of or escaping with the property," § 13A-8-43, Ala. Code 1975, and the person "[i]s armed with a deadly weapon or dangerous instrument; or [c]auses serious physical injury to another." § 13A-8-41, Ala. Code 1975.

> In *Pilley v. State*, 930 So. 2d 550, 564-65 (Ala. Crim. App. 2005), we explained:

>> Further, because intent is a state of mind, it is rarely susceptible of direct or positive proof. Instead, the element of intent must usually

be inferred from the facts testified to by the witnesses together with the circumstances as developed by the evidence. *Seaton v. State*, 645 So. 2d 341, 343 (Ala. Crim. App. 1994) (quoting *McCord v. State*, 501 So. 2d 520, 528-29 (Ala. Crim. App. 1986)) Intent """"may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.""" *Farrior v. State*, 728 So. 2d 691, 695 (Ala. Crim. App. 1998) (quoting *Jones v. State*, 591 So. 2d 569, 574 (Ala. Crim. App. 1991), quoting, in turn, *Johnson v. State*, 390 So. 2d 1160, 1167 (Ala. Crim. App. 1980)). Finally, "'[t]he intent of a defendant at the time of the offense is a jury question.'" *C.G. v. State*, 841 So. 2d 281, 291 (Ala. Crim. App. 2001), aff'd, 841 So. 2d 292 (Ala. 2002), quoting *Downing v. State*, 620 So. 2d 983, 985 (Ala. Crim. App. 1993).

The State argues that the direct and circumstantial evidence presented at trial was sufficient to allow a jury to find that P[etitioner] had the particularized intent to kill [the victim]. We agree. Multiple witnesses testified that they overheard P[etitioner] and his accomplice talk about needing money and possibly robbing someone to get money. Both Luke Hughley and Lee Garrett Johnson testified that P[etitioner's] accomplice was armed with a revolver a few hours before [the victim] was murdered. P[etitioner], Royal and Bobby Scott Smith were overheard discussing committing a robbery "on the Line," at Ver[o] Court, a known area for drug dealing. (R. 637.) Lee Garrett Johnson testified that when he overheard P[etitioner], Royal and Smith discussing "hitting a lick" down "on the Line," he yelled down to the three saying, ". . . I was, like, man, y'all go around f--ing around on the Line, y'all are going to get f---ed up. Just like that." (R. 637-8.) Viewing the evidence in the light most favorable to the state, there was sufficient evidence from which the jury could find beyond a reasonable doubt that P[etitioner] had the particularized to commit the intentional murder of [the victim].

Furthermore, the State was not required to prove that P[etitioner] "sanctioned or facilitated the killing during the robbery" in order to convict P[etitioner] of capital murder. Although a defendant does not personally commit the act of killing, he may nevertheless be convicted of capital murder under the principle of complicity. Section 13A-5-40(c), Ala. Code 1975, states:

> A defendant who does not personally commit the act of killing which constitutes the murder is not guilty of a capital offense defined in subsection (a) of this section unless that defendant is legally accountable for the murder because of complicity in the murder itself under the provisions of Section 13A-2-23, in addition to being guilty of the other elements of the capital offense as defined in subsection (a) of this section.

19

"A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense: . . . (2) [h]e aids or abets such other person in committing the offense" § 13A-2-23, Ala. Code 1975. This Court held in *Gwin v. State*, 456 So. 2d 845, 851 (Ala. Crim. App. 1984):

> "'Aid and abet "comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary."' *Jones v. State*, 174 Ala. 53, 57, 57 So. 31 (1911), quoted in *Radke v. State*, 292 Ala. 290, 292, 293 So. 2d 314 (1974). If the jury is convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, the fact that the defendant is an aider and abettor is established. *Jones*, supra; *Raiford v. State*, 59 Ala. 106, 108 (1877). 'The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved. *Fuller v. State*, 43 Ala. App. 632, 198 So. 2d 625 [(1966)]. Rather, the jury must examine the conduct of the parties and the testimony as to the surrounding circumstances to determine its existence.' *Miller v. State*, 405 So. 2d 41, 46 (Ala. Cr. App. 1981); *Watkins v. State*, 357 So. 2d 156, 159 (Ala. Cr. App. 1977), cert. denied, 357 So. 2d 161 (Ala. 1978)."

Quoted with approval in *Travis v. State*, 776 So. 2d 819, 862-63 (Ala. Crim. App. 1997), aff'd, 776 So. 2d 874 (Ala. 2000), cert. denied, 531 U.S. 1081 (2001).

The record indicates that the State presented sufficient evidence to prove the elements of the capital offense of murder during the course of robbery in the first degree. When considered together, the State's direct and circumstantial evidence strongly suggests that P[etitioner] was present when [the victim] was robbed and killed and that he participated in those offenses. In light of all the evidence presented by the State -- including testimony from witnesses who overheard P[etitioner], Royal and Smith planning the robbery, who saw P[etitioner] and Royal with a revolver, and who saw P[etitioner] and Royal after the murder with a great deal of cash along with personal property belonging to [the victim] -- we conclude that the evidence was sufficient to sustain P[etitioner]'s conviction for capital murder as a principal or accomplice. Therefore, the trial court did not err in denying P[etitioner]'s motion for judgment of acquittal.

*Doc. No. 20, Exh. D* at 14-19.

Where the evidence in the record reasonably supports Petitioner's guilt beyond a

reasonable doubt, the appellate court's rejection of Petitioner's claims that the evidence used to

convict him was insufficient and that the trial court erred in denying his motion for judgment of acquittal will not be disturbed in this habeas proceeding unless one of the two exceptions found in § 2254(d) applies.  *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).   Having independently reviewed the record, the arguments presented by the parties, applicable statutes, and controlling case law, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was not based on an unreasonable determination of the facts presented at trial nor was it an unreasonable application of *Jackson*. Habeas relief is not warranted on this claim.

   *ii.  Trial Counsel Ineffective for Failing to Object to the Trial Court's Decision to Deny Petitioner's Motion for Judgment of Acquittal*

   In Ground Thirteen Petitioner claims trial counsel performed deficiently by failing to object to the trial court's decision to deny the motion for judgment of acquittal. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme set forth the clearly established federal law on the issue of ineffective assistance of counsel.  The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial. Petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel. First, Petitioner must establish that the performances of his attorneys "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.   "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  Once this threshold test is met, Petitioner must then show that the deficient performance of his counsel prejudiced his defense.  *Id*. at 687.   To establish prejudice, Petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.   Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the

law entitles him.  *Williams*, 529 U.S. at 393 n. 17.  There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy.  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation."  *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

As explained, to demonstrate that his trial counsels' performance was deficient, Petitioner must show that his attorneys' performance "fell below an objective standard of reasonableness," and that counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. 668, 687 (1984). "In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Eagle v. Linahan*, 279 F.3d 926, 940 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). In light of the court's determination regarding Petitioner's substantive challenge to the sufficiency of the evidence used to convict him, even if Petitioner could show that trial counsels' conduct was objectively unreasonable, he has failed to establish prejudice as he has not demonstrated that but for counsels' alleged deficient performance, the result of his trial proceedings would have been different.  *Strickland*, 466 U.S. at 694. Petitioner is, therefore, not entitled to habeas relief on this claim of ineffective assistance of counsel.

**D. Ground Ten**

<u>*Trial Counsel Ineffective for Not Advising Petitioner of his Right to Testify*</u>

In Ground Ten Petitioner challenges trial counsels' performance claiming counsel did not advise him of his right to testify and/or failed to explain to him his right to testify. *See Doc. No. 26*.  Respondents assert that Petitioner presented this claim in his first post-conviction petition

but the claim was defaulted when he failed to present it in a timely appeal from the trial court's denial of his post-conviction petition. *Doc. No. 20*. Petitioner alleges as cause for his default that appellate counsel failed to present the claims presented in his initial Rule 32 petition on direct appeal. *See Doc. Nos. 26, 30*. It is clear, however, that Petitioner's first opportunity to assert the challenges to his trial and/or appellate counsels' performance occurred during his initial collateral review proceeding.[6] The default of this ineffectiveness claim resulted from Petitioner's failure to comply with the State's procedural rules.

A state criminal defendant does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *See, e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Accordingly, the general rule is that errors of counsel during a state post-conviction action cannot constitute "cause" to excuse the procedural default of a federal habeas claim.  *See, e.g.*, *Coleman*, 501 U.S. at 752. In *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012), however, the Supreme Court established a limited exception to this general rule, which exception applies only to Sixth Amendment ineffective assistance of counsel claims. *Martinez* held that inadequate assistance of post-conviction counsel *or* lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315.

In *Trevino v. Thaler*, the Supreme Court described the *Martinez* analysis as consisting of four prongs:

> We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an

---

[6] The same counsel represented Petitioner at trial and on direct appeal.

"ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

___.U.S. ___, 133 S. Ct. 1911, 1918 (2013), *citing Martinez*, 132 S. Ct. at 1318-19, 1320-21 (alterations in original).

To the extent Petitioner's response to Respondents' contention he defaulted this claim of ineffective assistance of trial counsel reflects that he seeks to excuse his procedural default under the provisions in *Martinez* because he was proceeding *pro* se during his initial Rule 32 petition (*see Doc. No. 30*), he cannot show cause to excuse the procedural default of Ground Ten because he still must establish that his underlying ineffective assistance claim is "substantial." *Martinez*, 132 S. Ct. at 1318-19.  He has not met this requirement for overcoming the procedural default as Petitioner has failed to show that his underlying ineffective assistance claim has "some merit." *Id*. at 1318.

In denying relief on this claim during Petitioner's Rule 32 proceedings, the trial court found:

> [Petitioner] was fully informed at trial of his right to testify (or not) and, rather incredibly, was even permitted to consult with a family member during a recess specifically for the purpose of deciding whether or not to testify (if the undersigned's memory of said trial is correct). It was apparent from the circumstances that [Petitioner] was aware of the significance of his choice and was given time to make the choice. Except for the bare allegation th[at] he was coerced, there exists no factual support of this claim.

*Doc. No. 20, Exh. J* at 26.

The record reflects the following transpired at trial after the State rested its case:

> MR. WHATLEY [Defense Counsel]: We will rest then in turn. We would like to put on the record that we have talked with Mr. Phillips about his right to testify.

> THE COURT: Okay.

MR. WHATLEY: And he has been advised of the ramifications if he does take the stand and subject himself to cross examination, and that he has decided that he does not want to do that. And we would ask that you examine him on the record.

THE COURT: Okay. You can just say –

MR. WHATLEY: And we just cover our bases.

THE COURT: You don't want to put him under oath, though, do you?

MR. WHATLEY: We don't have to, Judge. Just the acknowledgment on the record.

THE COURT: Okay. Okay. All right, Mr. Phillips. It appears what we are going to do in the case is that Mr. Treese on behalf of the State of Alabama is going to rest, and then your attorneys on your behalf are going to rest, and that you will not provide any testimony or evidence. Now, as the Defendant in the case, you have every right to testify, if—if you would like to testify in the case. Of course, if you testify you would be subject to cross examination by the State. But, of course, as the Defendant in the case, you have every right not to testify in the case, and no one can make any comment in front of the jury on your failure to testify. And that and certainly, you have no burden of proof whatsoever. You do not have to prove that you are innocent. And so what you are—so from what I understand from your attorneys is, you are telling us that you desire not to testify in this case. Is that correct?

MR. PHILLIPS: Yes, sir.

THE COURT: And do you understand your rights, that you can testify if you would like to?

MR. PHILLIPS: Yes, sir. I understand.

THE COURT: And do you understand that -- but you don't have to testify. Do you understand that?

MR. PHILLIPS: Yes, sir.

THE COURT: Okay.

*Doc. No. 20, Exh. A, Vol. 7* at 14-16.

Because the record does not support Petitioner's assertion that trial counsel failed to advise him about his right to testify and/or coerced him into not testifying, he (Petitioner) has

failed to show that Ground Ten is "substantial" so as to excuse his procedural default of this claim. Ground Ten is unexhausted and procedurally defaulted.

### E. Grounds Four, Five, Eleven, and Twelve

*Trial Counsel Ineffective for Not Objecting to Trial Continuances in Violation of the IADA and Trial Court Error in Granting Trial Continuances in Violation of the IADA*

In Grounds Eleven and Twelve Petitioner challenges trial counsels' effectiveness for failing to object when the trial court granted a joint motion to continue trial out of court and without his knowledge and when it granted the State's motion to continue trial on case law which did not "coincide" with Petitioner's circumstances in violation of the IADA. "The IADA is a compact among forty-eight states, the District of Colombia, and the Federal Government of the United States. The IADA establishes procedures by which one jurisdiction may temporarily obtain custody of a prisoner in another jurisdiction for the purpose of bringing that prisoner to trial." *Bolkovatz v. Sec'y*,  2013 WL 1881751, at *8 (M.D. Fla. 2013) (citing *Reed v. Farley*, 512 U.S. 339, 341 (1994) and *Seymore v. Alabama*, 846 F.2d 1355, 1357 (11th Cir. 1988)).

The record reflects that Petitioner was arrested and placed in the Lee County Detention Center in October 2006.[7] *Doc. No. 20, Exh. A, Vol. I.*  The State's motion to continue was filed January 11, 2007. In addressing Petitioner's challenges to the continuances of his trial as presented in his initial Rule 32 petition, the trial court determined:

> The Court addressed the speedy trial issue in a hearing on or about January 16, 2007. A copy of the order addressing this matter is attached and marked as exhibit "B". As the District Attorney points out in his response, this matter could have been raised on appeal. Therefore this issue is due to be dismissed. Also, the issue regarding the continuance is due to be dismissed. The continuance was requested by both parties. As pointed out by the petitioner, this was a joint motion to continue. A copy of this motion is attached and marked as exhibit "C". The Court

---

[7] Prior to his extradition to Alabama, it appears Petitioner was incarcerated in the State of Florida. *See Doc. No. 20, Exh. A – Vol. I,* at 23-24.

granted this joint motion on or about February 8, 2007. A copy of said order is attached and marked as exhibit "D".

*See Doc. No. 11, Exh. 2A* at 4-6. "Exhibit B" as referenced in the above-noted trial court order reflects:

> A status conference was held on January 16, 2007. Appearing for the State was Assistant District Attorney Kenneth Gibbs. Appearing on behalf of the Defendant were attorneys William Whatley and Juliana Taylor. The Defendant was also present. The Court proceeded to take up a motion to continue dated January 11, 2007 filed by the State. Essentially, the State was asking that for good cause shown, this matter be continued. The motion sets forth that there are several other capital murder cases that are set within the Circuit that have already been scheduled for trial and those cases are older than this case. Furthermore, it should be noted for the record, that the Defendant was incarcerated in the Lee County Jail in mid-October 2006. This was approximately 1 1/2 weeks prior to the Fall Criminal term of Court. The next term of Criminal Court commences on March 5, 2007. There was not an ample opportunity to arraign the Defendant and have his case set for the Fall term of Court. The Court has also reviewed the case of *Headrick v.State*, 816 So. 2d 517 (Ala. Cr. App. 2002). The Court is of the opinion that the requirements of §15-9-81 art. IV(c) have been met and that the Court should grant a necessary and reasonable continuance and the trial should be continued beyond the 120 day limit as set forth by the Act. However, this case is set for trial March 5, 2007 at 8:30 AM.

> A status conference is set for February 16, 2007 at 9:00 AM in courtroom #3 of the Lee County Justice Center.

*Id*. at 28. That order was dated January 22, 2007. Subsequently, by order dated February 6, 2007, the trial court granted the joint motion to continue the trial while leaving in place the previously scheduled pretrial conference. *Id*. at 30.

Petitioner challenges trial counsels' failure to object to the continuances granted by the trial court where the trial court "mis-applied" the state law it relied on as authority to grant the request for a continuance, *Doc. No. 26,* at 11, and granted the joint motion to continue trial when neither he nor his attorney was present in violation of the IADA. *Id.* at 12. An alleged IADA violation is not, without more, cognizable within the context of federal habeas corpus under § 2254. In *Reed*, 512 U.S. at 339, the Supreme Court considered whether a state prisoner's

claimed IADA violation was cognizable under § 2254. The Court held "that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." *Id*. at 352. *See also Phillips v. Jarrell*, 281 F. App'x 885, 886 (11th Cir. 2008) ("[IADA] violations are not cognizable in habeas proceedings absent a showing that the violation prejudiced the rights of the accused by affecting or impugning the integrity of the fact-finding process."). The Eleventh Circuit recognized that "when determining whether nonconstitutional federal claims are cognizable in federal habeas corpus proceedings, 'the appropriate inquiry [is] whether the claimed error of law [is] "a fundamental defect which inherently results in a *complete miscarriage of justice*," and whether '[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Seymore*, 846 F.2d at 1359 (citations omitted) (emphasis in original). Joining the First, Second, Fourth, Eighth, Ninth, and Tenth Circuits, the Eleventh Circuit determined that a violation of the IADA is a "nonfundamental defect and—absent a showing of some sort of prejudice—are uncognizable in a federal habeas corpus proceeding." *Id*. (citations omitted).

Petitioner argues he strongly advised trial counsel not to agree to a continuance of trial based on a loss of evidence and the passing of a key witness—Richard Holloway—whose testimony, Plaintiff claims, would "ultimately afforded a different outcome at trial." *Doc. No. 26 at 21*. Petitioner does not state what evidence was allegedly lost nor does he indicate the nature of the potential testimony the unavailable witness might have provided. Other than making generalized and conclusory assertions of missing evidence and lost testimony, Petitioner does not show that his ability to present a defense was prejudiced in any way by trial counsels' failure to object to the trial court's decisions to grant the requests for continuance of the trial. The record

confirms the agreement by both sides to a continuance of the initial trial date and that trial counsel jointly requested a second continuance citing the need for additional time to adequately prepare for trial. Moreover, trial counsel noted in the joint motion to continue that they were unprepared for the March 2007 trial date, which would have prejudiced Petitioner's ability to mount a defense at that time. *Doc. No. 20, Exh. A,Vol. I,* at 43-44. Additionally, where trial counsel themselves requested a continuance, it's difficult to conceive how their performance could be deficient in failing to object to the trial court's decision to grant their own motion.

Petitioner has not shown that the instant alleged deficiencies in trial counsels' conduct prevented him from mounting a defense, impaired his case, or rendered his state proceedings unfair in any manner. Consequently, Petitioner has failed to demonstrate a reasonable probability that but for counsels' failure to make the objections he faults them for omitting, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Petitioner's allegations of trial counsels' ineffectiveness presented in Grounds Eleven and Twelve do not warrant habeas relief.

In Grounds Four and Five Petitioner asserts his challenges to the trial continuances as a substantive claim of trial court error claiming that the trial court violated the IADA when it granted the continuances described above. Petitioner presented in his first Rule 32 petition his allegations of trial court error regarding granting continuances of his trial and the trial court denied relief on these claims. *Doc. No. 20, Exh.* J. at 25-27. Petitioner's appeal from the trial court's denial of his Rule 32 petition was deemed untimely by the Alabama Court of Criminal Appeals. Respondents, therefore, argue these allegations of trial court error are defaulted.[8] *Doc.*

---

[8] Respondents argue in a supplemental answer that Petitioner's default of these challenges to the trial court's conduct occurred due to his failure to present the claims on direct appeal. *See Doc. No. 24.* They

*No. 20.*  Petitioner asserts as cause for claims considered defaulted in this court that appellate counsel failed to raise the claims he presented in his Rule 32 petition on direct appeal.  *Doc. Nos. 26, 30.*  The default of these claims occurred, however, due to Petitioner's failure to exhaust the claims properly in his Rule 32 petition. Petitioner's contention that appellate counsels' alleged deficient performance constituted cause for the default is, thus, misplaced. Even if Petitioner could demonstrate cause for the default of Grounds Four and Five, however, he would be unable to demonstrate prejudice for the reasons discussed above.

Based on the foregoing, Petitioner demonstrates neither cause for his failure to present Grounds Four and Five to the state courts in compliance with applicable procedural rules nor the existence of actual prejudice emanating from infringement of federal law. These claims of trial court error are, therefore, unexhausted and procedurally defaulted.

## F. Ground Three

### Trial Court Error in Denying His Challenge for Cause of a Prospective Juror

Respondents assert that Petitioner has procedurally defaulted his claim regarding trial court error in denying his challenge for cause of a prospective juror because it was not presented to the state courts in accordance with state procedural rules.  *See O'Sullivan*, 526 U.S. at 844-45; *Henderson*, 353 F.3d at 891. Petitioner presented on direct appeal his contention that the trial court erred by denying his challenge for cause of prospective juror 147. Respondents maintain this claim is defaulted because of Petitioner's failure to present this issue in his petition for writ of certiorari to the Alabama Supreme Court. *Doc. No. 20, Exhs. B, D, E, G.*  Citing *Murray*, 477 U.S. 478, Petitioner argues that federal courts are not bound by state procedural bars when a

---

previously noted, however, that Petitioner did present these claims in his first post-conviction petition but his failure to timely appeal the denial of the petition caused a procedural default in this court.  *Doc. No. 20.*

constitutional violation has occurred, and asserts that failure to remove juror 147 violated his right to be tried by an impartial jury. *Doc. No. 26* at 9.  Petitioner further maintains as cause for the default of this claim the failure of appellate counsel to preserve the issue for review by presenting it in the petition for writ of certiorari. *Doc. No. 30* at 7. Although it does not appear that Petitioner's assertion of ineffective assistance of appellate counsel as cause for the default of Ground Three was ever presented independently in the state courts, Respondents argue that Petitioner has failed to show that appellate counsel's conduct was objectively unreasonable under *Strickland*, 466 U.S. at 688, and that but for appellate counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.  *See Doc. No. 28*. Respondents, thus, assert Petitioner cannot demonstrate cause sufficient to excuse his default of Ground Three. *Id.*

In order to demonstrate cause and prejudice based on a claim of ineffective assistance, a petitioner must show that counsel's performance was "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). In other words, a petitioner seeking to show ineffective assistance as the cause of a default must prove that his counsel was ineffective under the standard set forth in *Strickland*, 466 U.S. 684; *see Eagle*, 279 F.3d at 938 (the *Strickland* standard "applies whether [a court is] examining the performance of counsel at the trial or appellate level."). If Petitioner cannot prevail on a separate ineffective assistance of appellate counsel claim, then he cannot prevail on an argument that ineffective assistance caused the procedural default. *Edwards*, 529 U.S. at 451. Here, Petitioner has not shown that had appellate counsel properly exhausted Ground Three during his direct appeal proceedings that the the outcome of the appeal would have been affected.  *See Strickland*, 466 U.S. 688, 694.

The Alabama Court of Criminal Appeals addressed on direct appeal Petitioner's contention that the trial court erred in failing to remove juror 147 for cause. After juror 147

affirmed during *voir dire* that a family member had been the victim of a crime of violence, the trial judge discussed with the juror her positive answer in chambers.  Because the record reflected that potential juror 147 could be fair and impartial despite a family member of hers having been a victim of a crime of violence, the appellate court found the trial court had not abused its discretion in denying Petitioner's challenge for cause. *Doc. No. 20, Exh. A, Vol. 4* at 76-78, 93-94. Even if there was error on the part of the trial court, the appellate court further determined any such error was harmless as potential juror 147 was not selected to serve on the jury. *Doc. No. 20, Exh. D*, at 19-21; *Exh. A, Vol. 1* at 125-127.

Based on the record, it is clear that Petitioner cannot show that appellate counsel was ineffective for failing to present the challenged argument in the petition for certiorari. Therefore, Petitioner's failure to properly exhaust the instant claim of trial court error in the state courts cannot be excused, and the procedural default applies. Petitioner's claim of trial court error presented in Ground Three is unexhausted and procedurally defaulted.

## G. Grounds Seven and Fourteen

### Trial Court Error in Failing to Give Requested Jury Instructions and Trial Counsel Ineffective for Failing to Object to the Trial Court's Refusal to Give Jury Instructions

In Ground Fourteen Petitioner claims that trial counsel performed ineffectively for failing to object to the trial court's refusal to give requested jury instruction #12, #24, #35, and #36. In Ground Seven Petitioner also assigns as error the trial court's failure to give these four of his thirty-six requested jury instructions. To the extent the latter claim was presented in Petitioner's initial Rule 32 petition, Respondents maintain it is defaulted for Petitioner's failure to properly exhaust the claim in state court. *Doc. No. 20*. Petitioner asserts as cause for the default of this claim in this court that appellate counsel failed to raise the claims he presented in his Rule 32

petition on direct appeal. *Doc. Nos. 26, 30*. The default of the alleged trial court error claim presented in Ground Seven occurred, however, due to Petitioner's failure to exhaust the claim properly in his Rule 32 petition. Petitioner's contention that appellate counsels' alleged deficient performance constituted cause for the default is, thus, misplaced. Even if Petitioner could demonstrate cause for the default of Ground Seven, however, he would be unable to demonstrate prejudice as shown by the following discussion of this claim which Petitioner presents in terms of ineffective assistance of trial counsel.

In Ground Fourteen Petitioner alleges that trial counsel performed deficiently when they failed to object to the trial court's refusal to give requested jury instruction #12, #24, #35, and #36.'s. The instructions at issue include:

> # 12. In order to find the accused guilty of capital murder or any other offense, you must be unanimous in your decision.

> # 24. You are instructed that mere probabilities are not sufficient to warrant a conviction. It is neither sufficient that the greater weight or preponderance of the evidence supports the allegations of the indictment, nor that maybe it is more probable that the accused is more guilty than innocent. To warrant conviction, the accused must be proven to be guilty so fairly and conclusively that there is no reasonable theory upon which she can be innocent when all the evidence in the case is considered together. If the State fails to produce such evidence, you must find the Defendant not guilty.

> #35. If any of the prosecution's witnesses have exhibited anger or prejudice against this accused and satisfied you that they have not testified truly, and are not worthy of belief, and you think their testimony should be disregarded, you may disregard it altogether.

> #36. Michael Phillips may not be convicted of capital murder solely on circumstantial evidence, if those circumstances can be reconciled with the theory that someone else may have done the shooting that killed Gregory Johnson.

*Doc. No. 20, Exh. A, Vol. I* at 130-44.

Petitioner argues that trial counsel was ineffective for failing to object to the trial court's decision to reject these instructions because a trial court must give instructions regarding any

legitimate theory of defense. He maintains that had the trial court given jury instruction #24, based on the evidence produced by the State, it would have made difference in the outcome of the trial had the jury been instructed "that mere probabilities are not sufficient to warrant a conviction." Because the State relied heavily on witness testimony, Petitioner argues the trial court should have given instruction #35 which would have afforded him a fair trial. To support this assertion, he asserts the testimony of Alexious Hughley was tainted because he gave two different statements to police and showed hostility towards petitioner and that witness Ronald Hamilton testified to being coerced by Detective John Pruitt.  Failure to give jury instruction #36, Petitioner claims, was error because it was more than relevant for a jury to rely upon that charge if the State failed to prove every element of the crime charged against him.  *Doc. No. 19*.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state trial court's refusal to give a requested jury instruction does not, standing alone, warrant federal habeas corpus relief. The refusal to give the instruction must so infect the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (deficient jury charge is issue of constitutional dimension only where it renders entire trial fundamentally unfair); *Erickson v. Sec'y for the Dep't of Corr.*, 243 F. App'x 524, 528 (11th Cir. 2007) ("[E]rrors in state jury instructions are federal constitutional issues only where they render the entire trial fundamentally unfair.  *Jones v. Dugger*, 888 F.2d 1340, 1343 (11th Cir. 1989).").

The court has reviewed the trial record, including Petitioner's proposed instructions and the jury instructions given.  Petitioner's contention that his proposed instructions #24 and #36

were not given is incorrect. These instructions were given to the jury. *See Doc. No. 20, Exh. A, Vol. 7* at 146-47, 153. The parties agreed that proposed instructions #12 and #35 were covered by the trial court's oral charge, and giving those charges would, therefore, be unnecessarily repetitive. *Id.* at 26, 30-32.

Here, the record reflects that the jury instructions given were substantively correct and adequately addressed the applicable legal standards.  The instructions cited by Petitioner which he claims were omitted were not omitted or were covered by other instructions and would have been unnecessarily repetitive. The instructions to the jury indicated the elements of the crime of capital murder during a robbery and the lesser included offenses of murder and first degree robbery, and that the State had to prove Petitioner committed the offense beyond a reasonable doubt. There is nothing before this court to show that omission of the two jury instructions described above rendered Petitioner's trial fundamentally unfair. Consequently, Petitioner has failed to demonstrate that his claim of trial counsel's ineffectiveness as presented in Ground Fourteen entitles him to relief. *See Strickland*, 466 U.S. at 688, 694.

Based on the foregoing discussion, Petitioner's claim of trial court error regarding a failure to give requested jury instructions, even if properly before the court, would not entitle him to relief.  *See, e.g.*, *Rodriguez v. Wainwright*, 740 F.2d 884, 885 (11th Cir. 1984) ("Where a requested jury instruction is already covered by the charges given, failure to give the requested charge is not error at all, much less constitutional error.").  Ground Seven is, thus, unexhausted and procedurally defaulted.

**H. Grounds Eight and Fifteen**

*Trial Court Error in Failing to Disqualify a Potential Juror and Trial Counsel Ineffective for Failing to Object to the Trial Court's Failure to Disqualify a Potential Juror*

Petitioner claims in Ground Eight that the trial court erred in failing to disqualify a potential juror (juror number 174) who stated he knew the victim. In Ground Fifteen Petitioner alleges trial counsel performed deficiently by failing to object to this alleged error by the trial court. Respondents assert that Ground Eight is defaulted because it could have been but was not raised on direct appeal. *Doc. No. 24*. To the extent Petitioner alleges the ineffective assistance of appellate counsel as cause for his default of this claim (*Doc. Nos. 26, 30*), the default of the claim presented in Ground Eight occurred due to Petitioner's failure to exhaust the claim properly in his Rule 32 petition. Petitioner's contention that appellate counsels' alleged deficient performance constituted cause for the default is, thus, misplaced, and cannot constitute cause sufficient to overcome the default. Even if Petitioner could demonstrate cause for defaulting Ground Eight, however, he would be unable to demonstrate prejudice as shown by the following discussion of this claim which Petitioner has presented in terms of ineffective assistance counsel.

In Ground Fifteen Petitioner claims trial counsel were ineffective when they failed to object to the trial court's failure to excuse juror number 174 when he indicated he knew the victim and came from the same neighborhood as the victim. *Doc. No. 26* at 14, 15. During voir dire, juror number 174 raised his hand when the State asked if anyone knew anything about the case or if anyone had known the victim. *Doc. No. 20, Exh. A, Vol. 4* at 36-37. The following discussion of his positive answers was held:

THE COURT: All right. I think Mr. Treese had a follow-up question for you.

MR. TREESE: Yes, sir.

POTENTIAL JUROR 174: Yes.

MR. TREESE: You said that you had heard something about this case and you are familiar with the area where this particular incident took place. What is it—from where have you gotten your information, what have you heard?

POTENTIAL JUROR 174: Well, actually, it was in the news. You can hear it around town. You know, it happened in Opelika. I live in Opelika.

MR. TREESE: Did you know Greg Johnson?

POTENTIAL JUROR 174: Well, I didn't know him personally, but I knew him.

MR. TREESE: You knew of him?

POTENTIAL JUROR 174: Yes.

MR. TREESE: You would know him if you saw him?

POTENTIAL JUROR 174: Yes.

MR. TREESE: Okay. Would the fact that you know Mr. Johnson and that you have heard—read newspaper accounts of it or heard something in the area, would that cause you to feel like you couldn't be fair either to the State or to the Defendant in this case?

POTENTIAL JUROR 174: No.

MR. TREESE: Do you think you could set aside what you have heard and render a fair verdict for either side?

POTENTIAL JUROR 174: I think so. Yes. Sure.

MR. TREESE: Okay. All right. I don't have any other questions.

THE COURT: Do you remember what you have heard or what someone has told you about?

POTENTIAL JUROR 174: Well, it's been happened so long, I really done forgot it. I had forgot it, you know.

THE COURT: All right. But —but if something jogged your memory during the trial of the case, could you just put that aside and base your verdict solely on the evidence and testimony you received here in the courtroom?

POTENTIAL JUROR 174: Yes.

THE COURT: All right, Mr. Whatley. Anything?

MR. WHATLEY: Mr. Payne, did you know Mr. Johnson's name or you just remember more the facts about what happened?

POTENTIAL JUROR 174: Well, I just—well, he was much younger than me, but I just knew him, you know, from—I guess, just from seeing him.

MR. WHATLEY: Okay. But you weren't around that day that it happened?

POTENTIAL JUROR 174: Oh, no.

MR. WHATLEY: Have you talked with—I know you said people in the neighborhood know it and you are from Opelika and it was in the news, but have you talked to anybody in the neighborhood or community about this case or about what happened or about who was involved?

POTENTIAL JUROR 174: Well, naturally—you know, back when it first happened, I was working at West Point Homes, and it was discussed, you know, talking about it down there. That's about as much as I know about it.

MR. WHATLEY: Did they talk about—anything about who did it or

POTENTIAL JUROR 174: No.

MR. WHATLEY: —anything about how or why it was done?

POTENTIAL JUROR 174: Unh-unh (negative response).

MR. WHATLEY: Just that it happened?

POTENTIAL JUROR 174: (Nodding head in the affirmative.)

MR. WHATLEY: So you just have kind of general knowledge about—that it happened—

POTENTIAL JUROR 174: Yes.

MR. WHATLEY: —around that time and in that area and who the victim was? You don't know anything more than that?

POTENTIAL JUROR 174: Oh, no.

MR. WHATLEY: Thank you for letting us know, Mr. Payne.

POTENTIAL JUROR 174: Okay.

THE COURT: Thank you.

*Doc. No. 20, Exh. A, Vol. 4* at 103-08.

The record reflects that potential juror 174 did not know the victim but just knew of him and that he had heard about the case because it had been on the news and talked about at his workplace. He indicated he had only a general knowledge of victim and the case and that he could render a fair and impartial verdict. Juror 174 was selected to serve on Petitioner's jury. *See Doc. No. 20, Exh. A, Vol.  1* at 125-129.

Petitioner has alleged no facts to demonstrate that trial counsels' failure to object to juror 174 being seated on the jury constituted professional error or there was a reasonable probability that the result of the trial would have been different if they had done so. Juror 174's  statements to the court revealed no statutory ground for his excusal or any bias or prejudice against Petitioner so fixed that he could not render a fair and impartial verdict. *See  Daily v. State*, 828 So. 2d 340, 343 (Ala. 2001) ("To justify a challenge for cause there must be a statutory ground . . . , or some matter which imports absolute bias or favor . . . .") (internal quotations and citations omitted). Petitioner has not alleged that Juror 174 made statements in court indicating that he was not impartial or had a fixed opinion based on a bias and could not judge impartially. Here, Petitioner has not shown how trial counsels' failure to object to juror 174 being seated on the jury prejudiced him, *i.e.*, that there is a reasonable possibility that the result of the trial would have been different. *Strickland*, 446 U.S. 687 (a petitioner must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."). Accordingly, Ground Fifteen does not entitle Petitioner to habeas relief.

Based on the foregoing discussion, Petitioner's claim of trial court error in this regard, even if properly before the court, would not entitle him to relief. Ground Eight is, thus, unexhausted and procedurally defaulted.

### I. Ground Sixteen

*Trial Counsel Ineffective for Failing to Object to Trial Court's Failure to Give Requested Jury Charge*

In Grounds Sixteen Petitioner conclusorily asserts that trial counsel was ineffective for failing to object to the trial court's refusal to give requested jury charges. To the extent this is a restatement of Ground Fourteen, the court declines to revisit the issue.

### J. Grounds Seventeen and Eighteen

*Trial Counsel Ineffective for Failing to Object to Denial of a Motion for New Trial and Failing to Object to Admission of Photographic Evidence*

Petitioner claims in Ground Seventeen that trial counsel was ineffective for failing to object to the trial court's denial of his post-judgment motion for new trial. The trial court held a hearing on trial counsels' motion for new trial. Petitioner was present at the hearing. The trial court denied the motion on March 3, 2008, and Petitioner filed notice of appeal on April 9, 2008. *Doc. No. 20, Exh. A, Vol. 3* at 18, 25.

In Ground Eighteen Petitioner challenges trial counsels' performance in failing to object to the trial court's admission of photographic evidence when a motion "was set out to dismiss such." Petitioner does not identify the evidence he claims should not have been admitted or how admission of the evidence prejudiced him.

Besides the lack of specificity regarding Grounds Seventeen and Eighteen, Petitioner also fails to indicate how trial counsels' failures to object to the denial of the motion for new trial and

to object to the admission of the photographic evidence was ineffective assistance or how such failures resulted in prejudice to him. Petitioner cannot satisfy *Strickland's* prejudice prong with mere speculation or conclusory allegations. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012) (bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test); *Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Consequently, Grounds Seventeen and Eighteen are without merit and do not entitle Petitioner to habeas relief.

### K. Ground Nineteen

#### *Trial Court Error in Failing to Grant an Out-of-Time Appeal on First Rule 32 Petition*

Petitioner argues that the trial court committed error of constitutional magnitude when it denied his request to file an out-of-time appeal from the denial of his first Rule 32 petition. *Doc. No. 1; Doc. No. 19* at 25-26. Petitioner presented this claim in his second Rule 32 petition. The trial court summarily dismissed the petition. *Doc. No. 20*, *Exh. J* at 64-65. On appeal from the lower court's ruling, the Alabama Court of Criminal Appeals addressed Petitioner's allegation it should have granted him an out-of-time appeal from the denial of his first Rule 32 petition where, Petitioner claims, he filed a timely motion to alter, amend, or vacate the trial court's denial of his first post-conviction petition. *Id. Exh. M*. Petitioner maintained his motion tolled the time in which he had to appeal his initial post-conviction petition until the trial court ruled on the motion. *Id*. In affirming the trial court's dismissal of this claim, the appellate court noted that it could affirm a circuit court's ruling on a post-conviction petition if the ruling is correct for

any reason.  *Id*. at 3.   The Court of Criminal Appeals further determined that Petitioner's challenge to the trial court's ruling was meritless under state law.  *Id*. at 4.

Although Petitioner attempts to parlay this claim into one of constitutional proportion, it is based on an alleged violation of state law which entitles him to no relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988).   The Alabama Court of Criminal Appeals determined that the actions of the trial court in summarily denying Petitioner's second Rule 32 petition was proper. In particular, the appellate court determined that under state law there was no merit to Petitioner's claim he should have been granted an out-of-time appeal on the basis that his motion to alter or amend the trial court's denial of his first Rule 32 petition tolled the time in which he could appeal the denial of that petition.[9]  *Doc. No. 20, Exh. M* at 4.

"[A] state court's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved."   *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-

---

[9] In denying relief on this claim the appellate court quoted from its decision in *Loggins v. State*, 910 So. 2d 146 (Ala. Crim. App. 2005), which held, in part:

> "In the context of a Rule 32 petition, the post judgment motion frequently filed by petitioners and the one recognized by this Court, is a motion to reconsider or to modify the judgment. However, such a post-judgment motion, even if timely filed, does not extend the circuit court's jurisdiction beyond 30 days after the denial of the petition. *See, e.g., Henderson*, supra ( holding that the circuit court lacked jurisdiction to conduct  an evidentiary hearing on a petitioner's timely motion to reconsider more than 30 days after the court's denial of the Rule 32 petition).  Nor does the filing of such a motion toll the time for filing a notice of appeal.  *See, e.g., Ex parte Wright*, 860 S. 2d 1253, 1254 (Ala. 2002) (holding that, in the context of post-conviction relief, the 42-day appeal period runs from the date of the circuit court's denial of the Rule 32 petition  if the court does not issue a separate written order of denial, or if the court issues a separate written order denying the Rule 32 petition, the date that order is filed in the circuit clerk's office), and *Conley v. State*, 545 So. 2d 246, 247 (Ala. Crim. App. 1989) ('A motion to reconsider or amend does not fall within that category of motions that tolls the time for appeal under the Alabama Rules of Appellate Procedure.'). . . ."

*Doc. No. 20, Exh. M* at 4.

55 (11th Cir. 1983) (citations omitted) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes. . . . [Any claim based on] interpretation of . . . [a state's] laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").  Federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation.  *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996); *Walton v. Attorney Gen. of the State of Ala.*, 986 F.2d 472, 475 (11th Cir. 1993) (federal court is bound by decision of state court that no state law has been violated).   Here, Petitioner fails to show that the Alabama appellate court's construction of Alabama law violated his federal right to due process. He is due no relief regarding this claim as it fails to implicate denial of any constitutionally protected right.

**L. Ground Twenty**

<u>*Trial Court Lacked Jurisdiction to Impose Sentence*</u>

Petitioner claims that the trial court lacked jurisdiction to render judgment or impose sentence due to an alleged IADA violation. This claim was raised in Petitioner's second post-conviction petition. The state appellate court found that the trial court correctly concluded this claim was barred from review because it should have been raised at trial or on direct appeal. The appellate court noted the claim was not a jurisdictional issue and was, therefore, subject to the procedural bars of Rule 32, *Alabama Rules of Criminal Procedure.  See Harris v. Reed*, 489 U.S. 255 (1989) (where a state court has issued a plain statement that a claim is procedurally defaulted due to a petitioner's failure to present the claim in accordance with state procedural rules, the claim is barred from federal review). *Doc. No. 20, Exh. M*.

Petitioner asserts as cause for the default of this claim that appellate counsel failed to raise the claim on direct appeal. *Doc. Nos. 26, 30.*  Although it does not appear that Petitioner's assertion of ineffective assistance of appellate counsel as cause for the default of Ground Twenty was ever presented in the state courts, Respondents argue that Petitioner has failed to show that appellate counsel's conduct was objectively unreasonable under *Strickland*, 466 U.S. 688, and that but for appellate counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.   *See Doc. No. 28*. Respondents, thus, assert Petitioner cannot demonstrate cause sufficient to excuse his default of Ground Twenty. *Id.*

As explained, in order to demonstrate cause and prejudice based on a claim of ineffective assistance, a petitioner must show that counsel's performance was "so ineffective as to violate the Federal Constitution." *Edwards*, 529 U.S. at 451. That is, a petitioner seeking to show ineffective assistance as the cause of a default must prove that his counsel was ineffective under the standard set forth in  *Strickland*, 466 U.S. 684. E*agle*, 279 F.3d at 938. If Petitioner cannot prevail on a separate ineffective assistance of appellate counsel claim, then he cannot prevail on an argument that ineffective assistance caused the procedural default. *Edwards*, 529 U.S. at 451. It is clear, for the reasons discussed in § II, Grounds Four-Twelve, that Petitioner cannot show that appellate counsel was ineffective for failing to challenge on direct appeal the trial court's conduct regarding alleged IADA violations by granting continuances of trial. S*ee Reed*, 512 U.S. at 358 (Scalia, J., concurring) (violations of the IADA neither produce nor equate to a lack of jurisdiction in the convicting court, a constitutional violation, or a miscarriage of justice absent some showing of prejudice); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (the process of " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is

the hallmark of effective appellate advocacy."); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to argue a meritless issue). Therefore, Petitioner's failure to properly exhaust his claim regarding the trial court's alleged lack of jurisdiction to render judgment or impose sentence cannot be excused, and the procedural default applies. Petitioner's claim of trial court error presented in Ground Twenty is unexhausted and procedurally defaulted.

### M. Fundamental Miscarriage of Justice

Regarding Petitioner's claims considered procedurally defaulted, a federal court may grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *See Henderson*, 353 F.3d at 892.

The miscarriage of justice standard is directly linked to actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *Schlup*, 513 U.S. at 321. "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). The standard exacted by *Schlup* "is demanding and permits review only in the "extraordinary" case." *House v. Bell*, 547 U.S. 518, 538 (2006).

Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." *Id*. at 537.   "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623-24; *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence.").  *Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Petitioner fails to make the requisite showing of actual innocence.  He presents no evidence—nor suggests that any exists—that could satisfy the difficult standard in *Schlup*. Petitioner's procedurally defaulted claims are foreclosed from federal habeas review.

**N. Actual Innocence Claim**

Petitioner asserts he is actually innocent claiming the evidence produced at trial reflected that someone else committed the criminal act for which he was convicted.  *Doc. No.* 26 at 24-26. He conclusorily asserts that the statements given to the police by two witnesses (Bernard Harris and Richard Holloway) support his actual innocence.  *Id*.

For a petitioner's claims of actual innocence to prevail, he must link them to a claim of constitutional error rather than assert his innocence as a freestanding claim. In *Brownlee*, 306 F.3d at 1065, the Eleventh Circuit reiterated the Supreme Court's holding in *Herrera v. Collins* that "[c]laims of actual innocence based on newly discovered evidence have never been held to

state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings." 506 U.S. 390, 400 (1993); *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, the court finds that Petitioner presents only self-serving and conclusory allegations he is actually innocent arguing, essentially, that the evidence at trial was insufficient to sustain his conviction. Petitioner's arguments constitute claims of legal insufficiency rather than factual innocence. *See Bousley*, 523 U.S. at 622; *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (holding that a criminal defendant must provide evidence that does more than simply "undermine the finding of guilt against" him and finding that actual innocence is not established with evidence that only "casts doubt upon" the testimony presented against the defendant at trial); *see generally  Conteh v. United States*, 226 F. Supp. 2d 514, 519 (S.D.N.Y. 2002) ("A Section 2255 motion is not a vehicle for rearguing the credibility of witnesses.").  "To establish actual innocence, petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (citations and internal quotations omitted).

Petitioner has submitted no "new reliable evidence" to support his claims to meet the standard set forth by *Schlup*.  His mere contention he is actually innocent of the crime of his conviction is not supported by the record or any credible evidence.  The court, therefore, concludes that Petitioner's actual innocence claim fails.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Michael Phillips be DENIED and DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 18, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 4th day of March, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE